STATE OF NORTH CAROLINA v. RAYMUNDO ANTONIO CASTANEDA

No. COA11-7

(Filed 16 August 2011)

**1. Evidence—hearsay—not for truth of matter asserted— context—Confrontation Clause**

The trial court did not err in a second-degree murder case by admitting the transcript of a police interview without redacting detectives' statements indicating that witnesses saw defendant pick up a knife and stab the victim. The references to statements by unidentified third parties were not hearsay because they were offered to provide context and explain interviewing techniques. Further, the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.

**2. Evidence—failure to redact transcript—defendant telling a lie—police interrogation technique**

The trial court did not abuse its discretion in a second-degree murder case by failing to redact those portions of the transcript in which a detective accused defendant of telling a lie. The statements were part of an interrogation technique designed to show defendant that the detectives were aware of discrepancies in defendant's story rather than for the purpose of expressing an opinion as to defendant's credibility or veracity at trial.

**3. Homicide—second-degree murder—sufficiency of evidence**

Even assuming *arguendo* that detectives' statements should have been redacted in a second-degree murder case, defendant was not entitled to a new trial in light of the overwhelming evidence of defendant's guilt.

STATE v. CASTANEDA

[215 N.C. App. 144 (2011)]

Appeal by defendant from judgment entered 2 June 2010 by Judge Calvin E. Murphy in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 June 2011.

*Attorney General Roy Cooper, by Assistant Attorney General K. D. Sturgis, for the State.*

*Duncan B. McCormick for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Raymundo Antonio Castaneda appeals his second-degree murder conviction. After careful review, we find no error.

## Facts

The State presented evidence tending to establish the following facts at trial: Around 10:00 a.m. on 23 December 2007, several men, including defendant, Silvano Barrera, and a man nicknamed "Gota," were drinking beer at Gota's apartment in Charlotte, North Carolina. Moises Aguilar came over to Gota's house later that morning and began drinking beer with the other men. In the afternoon, Barrera asked defendant if he could borrow his grill to cook some steaks and defendant left Gota's house to go get the grill. When defendant returned with the grill, Barrera asked him to clean it while he went grocery shopping. While Barrera was gone, defendant told Aguilar to clean the grill, which made him angry, and the two men began arguing. Defendant threw a beer can at Aguilar and the two men started pushing each other. Aguilar went outside, defendant stayed inside the apartment, and the two men eventually calmed down.

Around 3:00 that afternoon, Barrera, who had been at his apartment preparing the food, went to Gota's apartment and told everyone to come to his house to eat outside. Defendant and Gota arrived at around 4:00 p.m. and Aguilar showed up a few minutes later. When he arrived, Aguilar "started saying stuff" to defendant and continued saying "stuff" to defendant during the meal. Aguilar then slapped defendant in the face. At this point, defendant "jumped" on Aguilar and the two men began fighting. Although at first Barrera thought defendant was punching Aguilar, when Aguilar fell to the ground on his side, knocking over the grill, Barrera saw that defendant was stabbing him with a kitchen knife. Barrera borrowed a neighbor's telephone and called 911. When someone told defendant that it looked like Aguilar was going to die, defendant fled the scene.

The paramedics arrived, found Aguilar pulseless and not breathing, and pronounced him dead at the scene. The autopsy revealed that

Aguilar was stabbed eight times in the chest and abdomen and seven times in the back and that Aguilar died as a result of these wounds.

Defendant was aware, a few days after the incident, that the police were looking for him, but he did not contact the police or turn himself in. Defendant left the state and first went to Charleston, South Carolina, then to Atlanta, Georgia, and finally to Jacksonville, Florida, where he was arrested seven months later, on 31 July 2008. After defendant was apprehended, he was interviewed by Charlotte-Mecklenburg Police Detectives William Brandon and Miguel Santiago. The interview was videotaped and transcribed.

Defendant was charged with first-degree murder. Prior to trial, defendant moved to redact portions of the transcript from the interview where the detectives referred to "other witnesses[']" statements about the events surrounding the homicide as well as portions in which the detectives told defendant that his version of events was a "lie." In declining to redact the statements referencing non-testifying third parties, the trial court ruled that the evidence was not being offered to prove the truth of the matter asserted, that the "State w[ould] be prevented from arguing the substance" of these statements, and that it would give a limiting instruction to the jury. The court also refused to redact the detective's statements that defendant was lying, noting that "officers are permitted to employ investigative and questioning techniques designed to elicit information from a suspect . . . ." When the challenged evidence was offered during trial, defendant renewed his objection, and the trial court overruled the objection.

Defendant elected to testify in his defense, explaining that Aguilar had attacked him with the knife and that he had stabbed Aguilar in self-defense. The jury found defendant guilty of second-degree murder and the trial court sentenced defendant to a presumptive-range term of 151 to 191 months imprisonment. Defendant timely appealed to this Court.

I

[1] Defendant first argues that the trial court erred in admitting the transcript of the police interview without redacting the detectives' "statements indicating that witnesses saw the defendant pick up a knife and stab the decedent." During the interview, Detective Brandon told defendant that he did not believe defendant's story that Aguilar attacked him, saying that "people said that . . . you picked the

knife up and you stabbed [Aguilar]." Later, Detective Santiago told defendant that some parts of his story were "not true" as they did not "match" the evidence from the scene.

### A. Hearsay

Defendant contends that the detectives' statements referring to what they had been told by non-testifying third parties constituted inadmissible hearsay. The State counters that the detectives' statements were not offered at trial for the truth of the matter asserted and thus did not constitute hearsay. Rule 801 of the Rules of Evidence defines "[h]earsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c). Consequently, as the State correctly points out, "[o]ut-of-court statements offered for purposes other than to prove the truth of the matter asserted are not considered hearsay." *State v. Call*, 349 N.C. 382, 409, 508 S.E.2d 496, 513 (1998). In particular, statements of one person to another to explain subsequent actions taken by the person to whom the statements were made are admissible as non-hearsay evidence. *State v. Coffey*, 326 N.C. 268, 282, 289 S.E.2d 48, 56 (1990). "The reason such statements are admissible is not that they fall under an exception to the [hearsay] rule, but that they simply are not hearsay—they do not come within the . . . legal definition of the term." *Long v. Paving Co.*, 47 N.C. App. 564, 569, 268 S.E.2d 1, 5 (1980). The trial court's determination as to whether an out-of-court statement constitutes hearsay is reviewed de novo on appeal. *State v. Miller*, 197 N.C. App. 78, 87-88, 676 S.E.2d 546, 552, *disc. review denied*, 363 N.C. 586, 683 S.E.2d 216 (2009).

Here, as noted by the trial court in denying defendant's motion, the detectives' references to statements by unidentified third parties are not hearsay because they were "not admitted for the purpose of conferring the truth of what [was] contained in [the] statements." Instead, the detectives' statements were offered to provide context for defendants' answers and to explain the detectives' interviewing techniques. *See id.* at 89, 676 S.E.2d at 553 ("Because defendant changed his story as a result of these out-of-court statements, it can be properly said that these questions were admitted to show their effect on defendant, not to prove the truth of the matter asserted."). As the detectives' statements were not offered to prove the truth of the matter asserted, they did not constitute hearsay, and the trial court properly admitted the evidence.

The trial court, moreover, instructed the jury twice "not to consider such statements for the truth of what was said but only for the impact those statements may have had on the Defendant as an interviewing technique by the detective[s]." It is well established that "[t]he law presumes that the jury heeds limiting instructions that the trial judge gives regarding the evidence." *State v. Shields*, 61 N.C. App. 462, 464, 300 S.E.2d 884, 886 (1983).

## B. Right to Confrontation

Defendant also argues that the admission of the detectives' statements violated his rights under the Confrontation Clause of the Sixth Amendment. It is well recognized, however, that "[t]he Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' " *Miller*, 197 N.C. App. at 87, 676 S.E.2d at 552 (quoting *Crawford v. Washington*, 541 U.S. 36, 59 n.9, 158 L. Ed. 2d 177, 197-98 n.9 (2004)). Thus, because the detectives' statements were not admitted to establish the truth of the assertions,—that certain witnesses saw defendant pick up the knife and stab Aguilar—but were instead used to provide context for defendant's responses, the admission of these statements did not violate defendant's confrontation rights. *See id.* at 90-91, 676 S.E.2d at 554 (finding no Confrontation Clause violation from admission of detectives' questions which included statements by non-testifying declarants as the evidence was admissible to assist the jury in "understand[ing] the circumstances in which the defendant was caught in a lie, changed his story, and made significant admissions of fact, not to prove the truth of the matter asserted"). Defendant's arguments are overruled.

## II

**[2]** Defendant next contends that the trial court erred in not redacting those portions of the transcript in which Detective Santiago accused defendant of telling a "lie" and giving an account of the fight that was "bullshit" and like "the shit you see in the movies". The trial court denied defendant's motion to redact these statements, observing that "officers are permitted to employ investigative and questioning techniques designed to elicit information from a suspect."

## A. Improper Opinion Evidence

Defendant claims that Detective Santiago's "statements constituted inadmissible opinion evidence on the truth or falsity of [defendant]'s pretrial statement and, ultimately, [his] testimony at trial."

STATE v. CASTANEDA

[215 N.C. App. 144 (2011)]

Because, defendant argues, the issue of defendant's credibility was "for the jury and the jury alone," the trial court erred in admitting this evidence. Defendant is correct that "[i]t is fundamental to a fair trial that the credibility of the witnesses be determined by the jury" and that testimony "to the effect that a witness is credible, believable, or truthful is inadmissible." *State v. Hannon*, 118 N.C. App. 448, 451, 455 S.E.2d 494, 496 (1995). The issue of the admissibility of an interrogator's statements during an interview that the suspect is being untruthful, however, has not been decided by North Carolina's appellate courts.

The majority of appellate courts of other jurisdictions that have considered such statements have held them admissible based on the rationale that such "accusations" by interrogators are an interrogation technique and are not made for the purpose of giving opinion testimony at trial. *See, e.g., Dubria v. Smith*, 224 F.3d 995, 1001 (9th Cir. 2000) (rejecting, in habeas corpus case, defendant's argument that detective's "comments and questions contained statements of disbelief of [defendant]'s story, opinions concerning [defendant]'s guilt, elaborations of the police theory of [vicitm]'s death, and references to [defendant]'s involvement in the crime" should have been redacted from tape and transcript because "[t]he questions and comments by [the detective] placed [defendant]'s answers in context"); *State v. Boggs*, 218 Ariz. 325, 334-35, 185 P.3d 111, 120-21 (upholding trial court's admission of video in which detective "repeatedly accused [the defendant] of lying" because detective's "accusations were part of an interrogation technique and were not made for the purpose of giving opinion testimony at trial"), *cert. denied*, ___ U.S. ___, 172 L. Ed. 2d 757 (2008); *State v. Cordova*, 137 Idaho 635, 641, 51 P.3d 449, 455 (Idaho App. Ct. 2002) (concluding that "officers' comments made during both interrogations indicating that they believed [defendant] was lying were admissible for the purpose of providing context to [defendant]'s inculpatory answers"); *but see State v. Elnicki*, 279 Kan. 47, 57, 105 P.3d 1222, 1229 (2005) (concluding that jury "should be prohibited from hearing" videotape of detective's statements during interview that defendant "was a liar," that defendant was " 'bullshitting' " the detective, and that defendant was " 'weaving a web of lies' "just as "[a] jury is clearly prohibited from hearing such statements from the witness stand").[1]

---

1. While decisions from other jurisdictions may have persuasive value, they are not binding on North Carolina courts. *Morton Bldgs., Inc. v. Tolson*, 172 N.C. App. 119, 127, 615 S.E.2d 906, 912 (2005).

As one state appellate court has recognized, "there is a difference between an investigating officer giving an opinion as testimony before a jury, and an investigating officer giving an opinion during the interrogation of a suspect." *Odeh v. State*, ___ So. 3d ___, ___, 2011 Fla. App. LEXIS 11005, *11, 2011 WL 2694434, *5 (Fla. Dist. Ct. App. 2011). The Supreme Court of Kentucky explained in *Lanham v. Commonwealth*, 171 S.W.3d 14 (Ky. 2005), that officers' comments during questioning that a suspect is not being truthful

> are not an attempt to describe to the jury the defendant's person-
> ality; nor are they statements aimed at impeaching a *witness*,
> especially when it is unknown whether a criminal defendant will
> take the stand. By making such comments, the officer is not try-
> ing to convince anyone—not the defendant (who knows whether
> he or she is telling the truth), other officers, a prosecutor, or the
> jury—that the defendant was lying. Rather, such comments are
> part of an interrogation technique aimed at showing the defend-
> ant that the officer recognizes the holes and contradictions in the
> defendant's story, thus urging him or her to tell the truth.

*Id.* at 27 (emphasis in original).

In holding that comments by police, similar to those by Detective Santiago in this case, were admissible, the *Lantham* Court noted that "[a]lmost all of the courts that have considered the issue recognize that this form of questioning is a legitimate, effective interrogation tool. And because such comments are such an integral part of the interrogation, several courts have noted that they provide a necessary context for the defendant's responses." *Id.* at 26-27. Thus the court concluded that "such recorded statements by the police during an interrogation are a legitimate, even ordinary, interrogation technique, *especially when a suspect's story shifts and changes.*" *Id.* at 27 (emphasis added).

In this case, during his post-arrest interview, defendant's expla-nation of what happened at Barrera's apartment during the afternoon of 23 December 2007 shifted from not "remember[ing] picking [up] the knife," to remembering "t[aking] it away" from Aguilar; from not remembering stabbing Aguilar at all, to remembering stabbing Aguilar "[m]aybe one" time, and then remembering stabbing him "twice in the stomach." These changes in defendant's story were in response to the detective's statements that defendant was not being truthful. Because Detective Santiago's statements were part of an interrogation technique designed to show defendant that the detec-

tives were aware of the holes and discrepancies in his story and were not made for the purpose of expressing an opinion as to defendant's credibility or veracity at trial, the trial court properly admitted the evidence. *See Boggs*, 218 Ariz. at 335, 185 P.3d at 121 (upholding admission of officer's accusation that defendant was not being truthful "[b]ecause [officer]'s accusations were part of an interrogation technique and were not made for the purpose of giving opinion testimony at trial").

Interrogators' comments reflecting on the suspect's truthfulness are not, however, always admissible. As the Idaho Court of Appeals explained:

> A suspect's answers to police questioning are only admissible to the extent that they are relevant. Thus, an interrogator's comments that he or she believes the suspect is lying are only admissible to the extent that they provide context to a relevant answer by the suspect. Otherwise, interrogator comments that result in an irrelevant answer should be redacted.

*Cordova*, 137 Idaho at 641, 51 P.3d at 455 (citing state evidence rule analogous to N.C. R. Evid. 401). Here, Detective Santiago's statements that he believed that defendant was "lying" and that his story was not believable are admissible as the statements provided the context surrounding defendant's inculpatory responses—statements relevant to the murder charge. *See id.* ("The officers' statements in this case that they believed Cordova was lying were admissible because the comments gave context to Cordova's inculpatory statements, which were relevant to the proceedings."); *see also Miller*, 197 N.C. App. at 87, 676 S.E.2d at 552 (finding police statements relevant because "[t]he circumstances under which [the defendant's] concessions were made were relevant to understanding the concessions themselves and therefore to the subject matter of the case").

## B. Danger of Unfair Prejudice

Defendant alternatively argues that even if Detective Santiago's statements accusing defendant of not being truthful were relevant, they should have been excluded under Rule 403, which prohibits the admission of evidence, despite being relevant, when the evidence's "probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C. R. Evid. 403. The decision concerning whether to exclude evidence under Rule 403's balancing test is a matter within the discretion of the trial court and its ruling will not be overturned on appeal in the absence of an abuse of discretion, *State v. McCray*,

342 N.C. 123, 131, 463 S.E.2d 176, 181 (1995), meaning that "the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Defendant maintains that the trial court abused its discretion under Rule 403 by allowing the jury to hear Detective Santiago's comments during the interview that defendant was lying and giving a story that was "bullshit" and like the "shit you see in the movies." As we have already explained, a jury may consider an interrogator's statements about a crime when they elicit a relevant response from the suspect being questioned. An interrogating detective's statements to a suspect, when placed in their proper context, may be understood by a rational jury to be interrogation techniques used by law enforcement officers to obtain inculpatory statements from a suspect. *See Eugene v. State*, 53 So. 3d 1104, 1112 (Fla. Dist. Ct. App. 2011) ("When placed in their proper context, an interrogating detective's statements to a suspect could be understood by a rational jury to be techniques used by law enforcement officers to secure confessions." (citation and internal quotation marks omitted)).

In this case, when considered in the context of the entire interview, the trial court did not abuse its discretion under Rule 403 in admitting Detective's Santiago's statements. *See id.* (holding that, "[w]hen placed in the context of the entirety of the interrogation, the trial court did not abuse its discretion in admitting" interrogating detectives' accusations that defendant was lying); *Bostick v. State*, 773 N.E.2d 266, 271 (Ind. 2002) (concluding that admission of "interrogators' accusations" that defendant had lied about not committing crime, "in the context of the entire statement, did not create a substantial risk of unfair prejudice"). This argument is overruled.

III

**[3]** Although we have held that the trial court did not err in admitting either of the two statements by the detectives, even if we assume for the sake of argument that the statements should have been redacted, defendant is not entitled to a new trial. The State presented overwhelming evidence at trial of defendant's guilt. Barrera, who was five or six feet from the fight, testified to seeing defendant "jump" on Aguilar, repeatedly stab him in the chest and, after knocking Aguilar down to the ground, stab him several times in the back. After stabbing Aguilar eight times in the front and seven times in the back, defendant left the scene without calling for help and fled the state. In

light of this overwhelming evidence, any error in the admission of the challenged evidence is harmless. N.C. Gen. Stat. § 15A-1443 (a) and (b) (2009).

No error.

Judges STROUD and Robert N. HUNTER, Jr. concur.