An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-60

Filed: 1 September 2015

Wake County, No. 13 CRS 201434

STATE OF NORTH CAROLINA,

v.

PATRICIO GUILEBALDO LOPEZ.

Appeal by defendant from judgments entered 3 July 2014 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 12 August 2015.

> *Attorney General Roy Cooper, by Special Deputy Attorney General William V. Conley, for the State.*

> *W. Michael Spivey, for defendant.*

CALABRIA, Judge.

Patricio Guilebaldo Lopez ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of three counts of first-degree rape of a child by an adult and one count of sexual offense with a child by an adult. Defendant contends the trial court committed plain error by admitting the following evidence: (1) an expert's opinion allegedly bolstering the victim's credibility; (2) an officer's allegedly irrelevant and improper testimony; and (3) an unredacted pre-arrest video

interrogation of defendant. We conclude defendant received a fair trial free from error.

## I. Background

The State presented evidence that Kate[1] was ten years old when defendant, her uncle and pastor, began sexually abusing her. Kate was friends with defendant's daughter and regularly spent the night at defendant's house to visit. Kate testified, and defendant later admitted—after being confronted by Kate in front of family and friends who testified at trial—his sexual abuse of Kate occurred during these sleepovers for approximately two years. According to Kate, defendant started touching her by fondling her breasts and vagina. Eventually, the fondling escalated to vaginal and anal intercourse during the times she slept at defendant's house.

At trial, the State also called Holly Warner ("Nurse Warner"), who testified that she examined Kate's genitalia for evidence of sexual abuse approximately six months after Kate reported defendant last penetrated her. At that time, Kate's medical examination yielded no physical evidence of penetration. Nurse Warner testified the absence of physical evidence of penetration was common in children even when multiple episodes of penetrative abuse had occurred. When asked if Kate exhibited symptoms suggestive of penetrative abuse, Nurse Warner testified that

---

[1] A pseudonym is used to protect the minor's identity.

Kate's reported pain while urinating and the pain Kate experienced while defecating were suggestive of vaginal and anal penetrative abuse.

The State's investigating officer, Sergeant Walter Adams ("Investigator Adams"), testified he had never seen a child sexual assault case with physical evidence of abuse, especially with the time that elapsed between Kate's last reported episode of penetration and her medical examination. The State also published to the jury a DVD recording of defendant's interview on the day he was arrested, in which Investigator Adams asked defendant multiple questions about the specifics of how he had sexually abused Kate, in an attempt to determine if defendant had penetrated Kate with his penis.

Defendant testified on his own behalf and admitted he had sexually abused Kate, but he denied ever penetrating her with his penis. The jury returned a verdict finding defendant guilty on all four counts, in which actual penetration by the male sexual organ was an essential element of the offenses. The trial court sentenced defendant to four consecutive sentences of a minimum of 300 months to a maximum of 369 months for the rape offenses and sexual offense of a child to be served in the North Carolina Department of Adult Corrections. Defendant appeals.

## II. Analysis

Defendant argues on appeal that the trial court erred by admitting the following: (1) the victim's medical examiner's opinion that, even in the absence of

physical evidence of penetration, the victim reported symptoms suggestive of penetration; (2) the investigating officer's testimony that he had never seen a minor sexual abuse case with physical evidence of abuse; and (3) the interrogating officer's statements he made during a pre-arrest video interrogation of defendant, that implied the officer believed the victim was being truthful about defendant penetrating her with his sexual organ and that defendant was not. Because defendant did not object at trial to the evidence he challenges on appeal, this Court's review is for plain error. *See* N.C.R. App. P. 10(a)(4) (2013) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error."); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007).

### A. Plain Error Standard of Review

"[Our Supreme] Court and the United States Supreme Court have emphasized that plain error review should be used sparingly, only in exceptional circumstances, to reverse criminal convictions on the basis of unpreserved error[.]" *State v. Lawrence*, 365 N.C. 506, 517, 723 S.E.2d 326, 333 (2012) (citations omitted). "The North Carolina plain error standard of review . . . requires the defendant to bear the

heavier burden of showing that the error rises to the level of plain error." *Id.* at 516, 723 S.E.2d at 333.

Our Supreme Court has elucidated the following framework for plain error review:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]

*Id.* at 518, 723 S.E.2d at 334 (internal citations, quotation marks, and brackets omitted). Because "[a] prerequisite to our engaging in a 'plain error' analysis is the determination that the [trial court's ruling] constitutes 'error' at all," *State v. Torain,* 316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986), we initially determine if the trial court erred by admitting the challenged evidence and, if so, then determine whether any error rose to the level of plain error.

**B. Challenged Admission of Expert's Testimony**

Defendant contends the trial court committed plain error by admitting testimony by the State's expert that, although Kate's medical examination was unremarkable for physical evidence of penetration, Kate exhibited symptoms suggestive of penetrative abuse. Specifically, defendant contends "[Nurse] Warner's

testimony that Kate had symptoms suggestive of penetration rests solely upon the assumption that Kate's statements about penetration and pain were true." According to defendant, "[Nurse Warner's] testimony was nothing more than expert vouching for the truth of the child's statements." We disagree.

Rule 702 of the North Carolina Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C. Gen. Stat. § 8C–1, Rule 702 (2013). Rule 703 provides in pertinent part: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing." N.C. Gen. Stat. § 8C–1, Rule 703 (2013). "In determining whether expert medical opinion is to be admitted into evidence the inquiry should be . . . whether the opinion expressed is really one based on the special expertise of the expert, that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact." *State v. Trent,* 320 N.C. 610, 614, 359 S.E.2d 463, 465 (1987) (citation omitted). Our Supreme Court has held:

> In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may

testify, upon a proper foundation, as to the profiles of
sexually abused children and whether a particular
complainant has symptoms or characteristics consistent
therewith.

*State v. Stancil*, 355 N.C. 266, 266–67, 559 S.E.2d 788, 789 (2002) (per curiam).

At trial, Nurse Warner, the State's expert witness, testified without objection. As a Board Certified Nurse Practitioner and a certified Sexual Assault Nurse Examiner, Nurse Warner testified she had performed over 300 medical evaluations on children suspected of being sexually abused. When she examined Kate in conjunction with another witness, Sara Kirk ("Ms. Kirk"), who conducted Kate's interview, Nurse Warner testified she found no visual signs of acute or chronic trauma to Kate's genitalia. When the State asked if this was unusual, Nurse Warner replied: "It is not, in fact. The majority of children have a normal physical exam even when they have been the victim of multiple episodes of penetrative abuse." When the State asked if Kate exhibited any symptoms suggestive of penetration, Nurse Warner replied that she did, in that Kate described to her and Ms. Kirk that "it hurt when she went number one and it hurt when she went number two[] . . . after the episodes of abuse."

Defendant challenges Nurse Warner's testimony elicited from the following exchanges:

> [State]: And in speaking with Ms. Kirk, were there any
> symptoms that were relayed to you that were suggestive of
> penetration?

> [Nurse Warner]: Yes, the pain, when [Kate] described pain with urination and pain with having a bowel movement after an event.
>
> [State]: How is that suggestive of penetration?
>
> [Nurse Warner]: The medical research shows that there's a correlation between children who disclose penetrative events and those children — a high proportion of children who disclose penetration complain of some urogenital symptom, such as pain with urination, pain with bowel movement, soreness and/or bleeding.

Additionally, defendant challenges the following response by Nurse Warner elicited during re-direct examination:

> [State]: And the history provided by [Kate] of these abusive events, was that consistent with symptoms that your experience and research shows are symptoms of penetration?
>
> [Nurse Warner]: Yes.

In the instant case, based on her training and experience, Nurse Warner certainly was in a better position than jurors to opine as to whether Kate's reported pain after an event was suggestive or symptomatic of penetrative abuse. Moreover, contrary to defendant's assertion, Nurse Warner never testified Kate *in fact* had been sexually abused or penetrated by defendant. Therefore, defendant's reliance on this Court's decisions in *State v. Ryan*, 223 N.C. App. 325, 734 S.E.2d 598 (2012); *State v. Delsanto*, 172 N.C. App. 42, 615 S.E.2d 870 (2005); *State v. Bush*, 164 N.C. App. 254, 595 S.E.2d 715 (2004); and *State v. Couser*, 163 N.C. App. 727, 594 S.E.2d 420 (2004),

are misplaced. Rather, Nurse Warner laid a proper foundation that "medical research shows . . . a high proportion of children who disclose penetration complain of some urogenital symptom, such as pain with urination, pain with a bowel movement, soreness and/or bleeding[,]" before stating her opinion that Kate's reported pain urinating or defecating after episodes of vaginal or anal penetration was "suggestive" or "symptom[atic]" of penetration. Moreover, this testimony could assist the jury understand the symptoms of sexually abused children and help it assess the credibility of Kate. Therefore, Nurse Warner's testimony was not an impermissible expert opinion regarding Kate's credibility, and the trial court did not err in admitting it. *See State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 367 (1987) (holding there was no error in admitting expert testimony describing the symptoms of sexually abused children and stating their opinions that the symptoms of the victim were consistent with abuse, noting: "[t]he fact that this evidence may support the credibility of the victim does not alone render it inadmissible"). Therefore, Defendant's argument is overruled.

**C. Challenged Admission of Investigator's Testimony**

Defendant next contends "[t]he trial court plainly erred by permitting [Investigator] Adams to testify that he had never seen a case of child sexual abuse where there was any physical evidence of penetration." We disagree.

Because defendant failed to cite any legal authority in support of this assertion except Rules 401 and 402 of the North Carolina Rules of Evidence which pertain to relevancy, our review is limited. *See State v. Velazquez-Perez*, __ N.C. App. __, __, 756 S.E.2d 869, 876 (2014) ("Failure to cite to supporting authority is a violation of Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, and constitutes abandonment of th[e] argument."), *appeal dismissed, disc. review denied,* 367 N.C. 509, 758 S.E.2d 881 (2014); *see also Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358 (2005) ("It is not the duty of this Court to supplement an appellant's brief with legal authority[.]").

Rule 402 of the North Carolina Rules of Evidence provides that all relevant evidence is admissible at trial. N.C. Gen. Stat. § 8C–1, Rule 402 (2013). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C–1, Rule 401 (2013). "This Court reviews questions of relevancy *de novo,* but accords deference to the trial court's ruling." *State v. Glenn,* 220 N.C. App. 23, 34, 725 S.E.2d 58, 67 (2012) (citing *State v. Lane,* 365 N.C. 7, 27, 707 S.E.2d 210, 223 (2011)).

At trial, Investigator Adams of the Wake County Sheriff's Office, who responded to and investigated Kate's sexual assault accusations against defendant.

Defendant challenges Investigator Adams' statements elicited in the following exchange:

> [State]: And going back to your interview with the defendant, you talked a lot about medical examinations and penetration. Were you also present for [Nurse] Warner's testimony yesterday?
>
> [Investigator Adams]: Yes, ma'am, I was.
>
> [State]: And you heard her testimony about how it's the exception to have physical findings in these types of cases with delayed reporting; is that correct?
>
> [Investigator Adams]: Yes, ma'am.
>
> [State]: Is that also consistent with your training and experiences in the cases you've investigated involving sexual assault?
>
> [Investigator Adams]: Yes, ma'am. I have never — in my career doing juvenile sex offences [sic], I've never had a case come across where there was physical evidence, especially not with the time that had elapsed.

In the instant case, Investigator Adams' challenged testimony that, in his experience, a normal physical examination was common in child sexual abuse investigations, is evidence of consequence to whether defendant may have penetrated Kate, even in the absence of physical findings of abuse. Put another way, Investigator Adams' testimony was relevant in that it tended to make more probable the fact that Kate's normal medical examination was not proof sexual abuse did not occur.

Therefore, the trial court did not err in admitting the challenged testimony on the grounds it was relevant, and defendant's argument is overruled.

### D. Challenged Admission of Unredacted Video Interrogation

Defendant's final argument is that the trial court plainly erred by admitting and publishing to the jury an unredacted pre-arrest video interview of defendant.[2] According to defendant, Investigator Adams made statements during the interview that were irrelevant and that constituted impermissible opinion evidence as to defendant's truthfulness and Kate's credibility. Specifically, defendant challenges what he described as a "six-minute monologue [by Investigator Adams] repeatedly asserting that Kate was telling the truth about penetration and [defendant] was not." **[Def Br. p. 31]** We disagree.

" '[I]t is fundamental to a fair trial that the credibility of the witness be determined by the jury' and that testimony 'to the effect that a witness is credible, believable, or truthful is inadmissible.' " *State v. Castaneda*, 215 N.C. App. 144, 149, 715 S.E.2d 290, 294 (2011) (quoting *State v. Hannon*, 118 N.C. App. 448, 451, 455

---

[2] A DVD recording of the interrogation published to the jury was included in the record on appeal. Although the DVD failed to depict video, the interrogation—which contained the challenged statements—was clearly audible.

S.E.2d 494, 496 (1995)). However, where statements made by an interrogating officer are relevant and not unfairly prejudicial, they are admissible even if they contain comments on a witness's credibility that would otherwise be inadmissible. *See State v. Garcia*, __ N.C. App. __, __, 743 S.E.2d 74, 81–82 (2013), *disc. review denied*, 367 N.C. 326, 743 S.E.2d 74 (2014); *Castaneda*, 215 N.C. App. at 151–52, 715 S.E.2d at 295–96; *State v. Miller*, 197 N.C. App. 78, 85–94, 676 S.E.2d 546, 550–56 (2009).

In *Miller*, the trial court admitted into evidence a DVD recording of the defendant's interview with police, without redacting the detectives' questions posed to the defendant which contained statements by non-testifying third parties that implicated the defendant. 197 N.C. App. at 85–86, 676 S.E.2d at 550–51. During the interrogation, the defendant conceded the truth of many statements attributed to the non-testifying third parties during the interrogation. *Id.* at 87, 676 S.E.2d at 552. The defendant in *Miller* argued the officer's statements and the defendant's responses were improperly admitted because they were irrelevant. *Id.* at 86, 676 S.E.2d at 551. This Court held the detectives' statements were relevant, explaining:

> The circumstances under which these concessions were made were relevant to understanding the concessions themselves and therefore to the subject matter of the case. At other times, after being confronted with the purported statements of others via the detectives' questions, defendant changed his story substantially. In these instances, the questions were also relevant to explain and provide context to defendant's subsequent conduct of changing his story. In sum, the detectives' questions were clearly relevant.

*Id.* at 87, 676 S.E.2d at 552.

In *Castaneda,* an unredacted DVD interrogation of the defendant was played for the jury, and the defendant challenged the admissibility of the interrogator's statements made during the interview that the defendant was being untruthful. 215 N.C. App. at 148–49, 715 S.E.2d at 294. In deciding this issue, the *Castaneda* Court noted "[t]he majority of appellate courts of other jurisdictions that have considered such statements have held them admissible based on the rationale that such 'accusations' by interrogators are an interrogation technique and are not made for the purpose of giving opinion testimony at trial." *Id.* at 149, 715 S.E.2d at 294 (citations omitted). This Court held that while an interrogator's comments are not always admissible, they were proper where, as there, the interrogator's statements provided context to the defendant's inculpatory statements. *Id.* at 151, 715 S.E.2d at 295. The *Castaneda* Court explained:

> Because [the detective's] statements were part of an interrogation technique designed to show defendant that the detectives were aware of the holes and discrepancies in his story and were not made for the purpose of expressing an opinion as to defendant's credibility or veracity at trial, the trial court properly admitted the evidence.

*Id.* at 150–51, 715 S.E.2d 295 (citation omitted). However, the *Castaneda* Court cautioned:

> A suspect's answers to police questioning are only admissible to the extent that they are relevant. Thus, an

> interrogator's comments that he or she believes the suspect is lying are only admissible to the extent that they provide context to a relevant answer by the suspect. Otherwise, interrogator comments that result in an irrelevant answer should be redacted.

*Id.* at 151, 715 S.E.2d at 295 (citation omitted).

In *Garcia*, a case where this Court similarly considered the admissibility of a detective's statements made during a pre-trial interrogation, this Court applied the principles promulgated in *Castaneda*, and held admissible the detective's statements because they provided relevant context to answers by the defendant that related to the credibility of his claim of self-defense, which was made for the first time at trial. __ N.C. App. at __, 743 S.E.2d at 81–82. In that case, this Court addressed the defendant's argument that an interrogator's statements were admissible as relevant under *Miller* only if they provided "context" by causing a defendant to concede the truth or change his or her story. *Id.* at __, 743 S.E.2d at 80. This Court concluded: "*Miller* does not limit 'context' to those two situations. Rather, whether an interrogator's remarks provide relevant 'context' for a defendant's responses depends on the facts of each case." *Id.* at __, 743 S.E.2d at 80.

In the instant case, Investigator Adams' challenged remarks during defendant's pre-arrest interview were similar to the detectives' statements in *Castaneda* because they were designed to show defendant that Investigator Adams was aware of the holes and inconsistencies in his story and provided context to

defendant's relevant responses. Although defendant never admitted to penetrating Kate during the pre-arrest interview, after Investigator Adams' increased pressure, defendant eventually conceded he came as close as possible to penile penetration. Indeed, Investigator Adams' remarks eventually elicited the following relevant exchange:

> [Investigator Adams:] [Did] you have intercourse with her?
>
> [defendant:] Not really, not really. Like, like, have sex? Sex, no. No, no, not, not at that, not at point [sic], you know.

Furthermore, after Investigator Adams' pressing remarks, defendant eventually conceded that he touched Kate's vagina with his penis on six occasions, that he put on a condom during three of those occasions, and that he ejaculated on all six occasions. Defendant also conceded he touched Kate's vagina with his hand ten times. However, at trial, defendant testified he touched Kate's vagina with his penis only three times and her vagina with his hand only six times.

Since Investigator Adams' statements were not made for the purpose of giving opinion testimony as to a witness's credibility, we conclude his statements were properly admitted. Just as the Courts in *Miller*, *Castaneda*, and *Garcia* concluded that the officer's statements and the defendant's responses were admissible if they provided relevant context, in the instant case, Investigator Adams' statements provided context that is relevant in considering defendant's responses and

admissions about his sexual abuse of Kate, which bore directly on the credibility of his claim that defendant never penetrated Kate with his penis.

The statements and responses elicited during the entire pre-arrest interview were relevant for the jury to determine the extent that defendant sexually abused Kate, including whether defendant actually penetrated Kate with his penis. Therefore, it was not error for the trial court to admit these challenged statements.

## III. Conclusion

Defendant has failed to demonstrate the trial court erred in admitting the challenged evidence. Moreover, even absent the admission of the challenged evidence, the State presented sufficient evidence for the jury to return a verdict finding defendant guilty of all four offenses. Thus, defendant has not shown a "different result probably would have been reached but for the [trial court's] error" in admitting the challenged evidence. *See State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). We conclude defendant received a fair trial free from error.

NO ERROR.

Judges ELMORE and DILLON concur

Report per Rule 30(e).