ELMORE, Judge.
 

 *383
 
 A jury found Dominic Clevinger (defendant) guilty of robbery with a dangerous weapon. On appeal, defendant contends that the trial court erred in admitting prejudicial statements by a detective during defendant's interrogation, and in failing to instruct the jury on the elements of common law robbery. We conclude that defendant received a trial free from prejudicial error.
 

 I. Background
 

 The State's evidence at trial tended to show the following: On 11 June 2013, Crystal Lynn McDade was working as the manager and cashier at
 
 *384
 
 the Stanleyville Business Center (SBC). The SBC was an Internet sweepstakes café where customers could purchase Internet time to play games and win cash prizes. McDade had brought her fifteen-year-old daughter, Alyssia Hicks, to work with her that morning.
 

 Around 9:00 a.m., McDade observed a man walk into the SBC to use the restroom and leave a few seconds later. She thought it was unusual because "he did not purchase anything" and "did not speak to anyone.... We don't usually have people [ ] walk off the street to use the restroom." Around 10:30 a.m., the same man returned to the SBC and approached McDade at the cashier's station. He handed her a twenty-dollar bill and began patting himself down, searching for his driver's license. He told McDade that he could not find his license and left to look for it in his car.
 

 The man returned a few seconds later and dropped a plastic Dollar General bag on the counter in front of McDade. He grabbed Hicks, jerked her head back, and held a knife to her exposed neck, telling McDade to "put the money in the bag or he was going to slit [Hicks'] throat." At trial, Hicks described the knife as "cold and hard." McDade testified that she saw the knife but could not recall how big it was. McDade opened the register and started pulling out money. Before she could put it into the bag, the man snatched the money and fled the store. Hicks was left with a red mark on her throat where the knife was held, but she was not bleeding.
 

 Officers responded to the scene and took a statement from McDade. She described the suspect as a white male with reddish-brown hair, a slender build, and freckles on his arms and face. He was wearing a red polo-style shirt and long plaid shorts. Sergeant Gomez, one of the responding officers, located a red shirt on the side of the road in a gravel area near the SBC. It was preserved for evidence and sent to the state crime lab for testing, where Agent Hannan obtained DNA samples from the shirt. A few days after the robbery, McDade identified defendant in a photographic line-up as the robbery suspect.
 

 McDade provided Detective Watkins with a series of videos captured that morning on the SBC's surveillance cameras. As he watched the videos, Detective Watkins noticed that, in addition to McDade's description, the male suspect was wearing "a low cut shoe" and "had what appeared to be the end of a belt hanging down the right side of his body that is kind of flapping against his leg as he walked." He also noticed that before the male suspect entered the SBC, a woman wearing a bandana, a t-shirt with writing across the top and a design in the center, and red Capri pants walked into the SBC to use the restroom and leave. Video
 
 *385
 
 surveillance taken earlier that morning from a nearby Target showed the same woman leaving the store with a man who matched the physical description of the male robbery suspect.
 
 *251
 
 After learning from McDade that the male suspect had used what appeared to be a new Dollar General bag during the robbery, Detectives Watkins and Olivo went to a nearby Dollar General to follow up on the lead. When they entered the store, they noticed a woman in a bright green tank-top checking out at the cash register. She caught their attention because of the bright color of her shirt, her tattoos, and her noticeable hairstyle.
 

 The detectives made contact with the assistant manager of the Dollar General to review the surveillance footage taken earlier that day-approximately one hour before the robbery. The video showed the same woman in the bright green tank-top purchasing a three-piece set of chef's knives and a DVD at 9:09 a.m. One minute later, a white male walked into the store, stood next to her at the cash register, picked up the DVD to look at it, and then set it back down. He was wearing a red polo shirt, long plaid shorts, a belt hanging down the right side of his leg, and otherwise matched the physical description of the robbery suspect.
 

 After reviewing the surveillance footage, detectives returned to the front of the store looking for the woman in the green tank-top. The Dollar General cashier, Tiffany Perdue, informed the detectives that the woman had left, but she had spoken to Perdue about tattoos while she was in the store and had given Perdue her telephone number. A reverse search of the number revealed that it belonged to defendant's cousin, Krystal Clevinger. Detective Olivo secured an address for Ms. Clevinger and her photo. He recognized her as the woman in the green tank-top he had seen at Dollar General and on the surveillance video.
 

 The detectives went to Ms. Clevinger's home to ask about her purchase earlier that day at Dollar General. She produced a three-piece set of chef's knives, one of which was missing from the opened package. At that point, Ms. Clevinger agreed to go with the detectives to the public safety center for an interview. She also consented to a search of her vehicle, where the detectives found the DVD she had purchased at Dollar General. The knife set and the DVD packaging were submitted for latent fingerprint examination.
 

 At trial, the State called Cindy Persinger as a witness, with whom defendant and his girlfriend had lived several years ago. Persinger recalled that on 10 June 2013, the day before the robbery, defendant came to her house accompanied by an older woman. Persinger testified
 
 *386
 
 that the woman was wearing a bandana, a white t-shirt, and red Capri pants, and that defendant was wearing a black shirt, plaid shorts, black hat, and was carrying a red shirt over his shoulder. Defendant told Persinger that he was in town from Florida for a "quick visit," and was waiting for his cousin, Ms. Clevinger, to pick him up. Defendant and the woman waited for about three hours until they decided to walk. He called Persinger shortly after leaving her house to tell her that Ms. Clevinger had picked him up as he was walking down the road. When Detective Watkins interviewed Persinger and showed her still images of the male and female suspects in the Target video, she identified them as defendant and the woman who had been at her house.
 

 Defendant was arrested in Florida in October 2013 on an unrelated charge, and extradited to North Carolina on 15 December 2013. Detectives obtained a saliva sample from defendant, which was sent to the state crime lab for testing. A comparison of the DNA results from the red polo shirt found near the SBC matched the predominant profile of defendant's DNA. In addition, defendant's fingerprints were identifiable on both the DVD and the set of chef's knives purchased from Dollar General on the same day as the robbery.
 

 During a video-taped interrogation, defendant repeatedly denied any involvement in the robbery. He filed a motion
 
 in limine
 
 to redact portions of the interrogation video in which Detective Watkins: (1) expressed his opinion that all of the evidence "points to [defendant]"; (2) referenced alleged statements by Ms. Clevinger that defendant had a drug problem; (3) asserted that the "same exact person" seen in the SBC surveillance video is seen with Ms. Clevinger in surveillance footage from other stores; (4) opined that it was defendant on the SBC video and
 
 *252
 
 stated that he had "seen the video himself"; (5) referenced alleged statements by Ms. Clevinger that defendant was with her at the other stores; (6) referenced alleged statements by Ms. Clevinger that defendant looked thinner than usual because of his drug use; (7) referenced an alleged statement by Ms. Clevinger that defendant took one of the knives she bought at Dollar General; (8) referenced defendant's prior arrest; (9) told defendant he had phone records and proof that defendant and Ms. Clevinger changed their phone numbers after the robbery; (10) alleged that defendant "called the shit out of [Ms. Clevinger]" while she was being interviewed by law enforcement; and (11) told defendant that he was "one cold dude."
 

 In response to defendant's motion, the State argued that it was not offering the statements for their truth, but to provide "context to defendant's responses" and "to explain how a detective conducts an interview
 
 *387
 
 and interview techniques." Over defendant's objections, the trial court admitted the challenged portions of the video with the following limiting instruction:
 

 THE COURT: Members of the jury, in the exhibit that you are about to see, Detective Watkins and Olivo interviewed the defendant, Mr. Clevinger, after he had been arrested. During the course of the interview it may be that one of the detectives expresses his opinion that the defendant, Dominic Clevinger, is the person shown in one or more of the surveillance videos.
 

 You are not to consider this opinion evidence for the truth of whether Mr. Clevinger is pictured in the videos. It is your duty to determine whether the defendant is depicted in any of the surveillance videos. You may consider any such statement or opinion only for the impact that opinion or statement may have had on the defendant as an interviewing technique by the detectives.
 

 Officers are permitted to employ investigative and questioning techniques designed to elicit information. During the course of the interview it may be that the detective accuses the defendant of being untruthful or lying to him. You can consider the detective's remarks not for the truth of what the detective is alleging but as an investigative technique designed to elicit information from a suspect.
 

 Similarly, if the detective makes any statements to the defendant about what other people told him or about any alleged evidence against the defendant or what that alleged evidence is, you can consider such statements in the context of interrogation techniques used by law enforcement officers to secure confessions. You are not to consider the statements the detective attributes to others as being made for the truth of those statements because they were not made under oath and admitted at this trial.
 

 The trial court repeated the instruction at the close of the evidence, at which point it also instructed the jury on the elements of robbery with a dangerous weapon. The court declined the State's request to declare the knife a dangerous weapon as a matter of law, leaving the question for the jury, and denied defendant's request for an instruction on the lesser-included offense of common law robbery.
 

 *388
 
 The jury found defendant guilty of robbery with a dangerous weapon, and he pled guilty to an aggravating factor of willful violation of probation or parole. The trial court entered a judgment and commitment in the aggravated range, sentencing defendant to an active term of 140 to 180 months of imprisonment. Defendant gave notice of appeal in open court.
 

 II. Discussion
 

 A. Hearsay and Relevance
 

 First, defendant argues that the trial court erred in admitting the challenged portions of the video-taped interrogation. Defendant contends that no portion of the interview was relevant, and that the State's reasons for admitting the video-to show the detective's interrogation techniques and provide context for defendant's responses-were a pretext to put before the jury what was otherwise inadmissible hearsay and improper lay opinion testimony.
 

 "Preserved legal error is reviewed under the harmless error standard of review."
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 512,
 
 723 S.E.2d 326
 
 , 330 (2012) (citing N.C. Gen. Stat. § 15A-1443 (2009)
 

 *253
 
 ; N.C. R. App. P. 10(a)(1) ;
 
 State v. Bishop,
 

 346 N.C. 365
 
 , 385,
 
 488 S.E.2d 769
 
 , 779 (1997) ). Where, as here, "the error relates to a right not arising under the United States Constitution, North Carolina harmless error review requires the defendant to bear the burden of showing prejudice."
 
 Id.
 
 at 513,
 
 723 S.E.2d at
 
 331 (citing N.C. Gen. Stat. § 15A-1443(a) ). "In such cases the defendant must show 'a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.' "
 

 Id.
 

 (quoting N.C. Gen. Stat. § 15A-1443(a) ).
 

 "Hearsay" is a an out-of-court statement "offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (2015). "Hearsay is not admissible except as provided by statute or by [the rules of evidence]." N.C. Gen. Stat. § 8C-1, Rule 802 (2015). Where an out-of-court statement is offered for a purpose other than to prove the truth of the matter asserted, it is not hearsay because it does not fit the legal definition.
 
 State v. Call
 
 ,
 
 349 N.C. 382
 
 , 409,
 
 508 S.E.2d 496
 
 , 513 (1998) ;
 
 Long v. Asphalt Paving Co. of Greensboro
 
 ,
 
 47 N.C.App. 564
 
 , 569,
 
 268 S.E.2d 1
 
 , 4-5 (1980). To be admissible, however, the statement must still be relevant to the nonhearsay purpose for which it was offered.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 402 (2015) ("Evidence which is not relevant is not admissible.").
 

 *389
 
 "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2015). "In order to be relevant, ... evidence need not bear directly on the question in issue if it is helpful to understand the conduct of the parties, their motives, or if it reasonably allows the jury to draw an inference as to a disputed fact."
 
 State v. Roper
 
 ,
 
 328 N.C. 337
 
 , 356,
 
 402 S.E.2d 600
 
 , 611 (1991) (citing
 
 State v. Potter
 
 ,
 
 295 N.C. 126
 
 , 132,
 
 244 S.E.2d 397
 
 , 401-02 (1978) ). While "a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal."
 
 State v. Wallace
 
 ,
 
 104 N.C.App. 498
 
 , 502,
 
 410 S.E.2d 226
 
 , 228 (1991) (citation omitted),
 
 appeal dismissed and disc. review denied,
 

 331 N.C. 290
 
 ,
 
 416 S.E.2d 398
 
 ,
 
 cert. denied,
 

 506 U.S. 915
 
 ,
 
 113 S.Ct. 321
 
 ,
 
 121 L.Ed.2d 241
 
 (1992).
 

 This Court has previously addressed the admissibility of statements made by law enforcement during video-taped interrogations. In
 
 State v. Miller
 
 ,
 
 197 N.C.App. 78
 
 ,
 
 676 S.E.2d 546
 
 (2009), the defendant argued that "statements attributed to non-testifying third parties, which were contained in the detectives' questions, should have been redacted before the [interrogation] was presented to the jury."
 
 Id.
 
 at 85,
 
 676 S.E.2d at 551
 
 . We held that the detectives' questions were relevant to give context to concessions made by the defendant during the interrogation, and to explain the defendant's subsequent conduct in changing his story when confronted with purported statements of others through the detectives' questions.
 
 Id.
 
 at 87,
 
 676 S.E.2d at 552
 
 .
 

 Similarly, in
 
 State v. Castaneda
 
 ,
 
 215 N.C.App. 144
 
 ,
 
 715 S.E.2d 290
 
 (2011), the defendant moved to redact portions of a transcript from an interrogation in which the detectives referred to statements from "other witnesses" about events surrounding a homicide, "as well as portions in which the detectives told [the] defendant that his version of events was a 'lie.' "
 
 Id.
 
 at 146,
 
 715 S.E.2d at 292
 
 . During his post-arrest interview, the defendant's story shifted significantly in response to a detective's allegations that the defendant was not being truthful.
 
 Id.
 
 at 150,
 
 715 S.E.2d at 295
 
 . We held that the statements were admissible to show the effect that they had on the defendant.
 

 Id.
 

 More specifically, as "part of an interrogation technique designed to show [the] defendant that the detectives were aware of the holes and discrepancies in his story," the detectives' statements were relevant because they yielded inculpatory responses from the defendant which were "relevant to the murder charge."
 
 Id.
 
 at 150-51,
 
 715 S.E.2d at
 
 295 ;
 
 see also
 

 id.
 
 at 151,
 
 715 S.E.2d at 295
 
 ("[A]n
 
 *390
 
 interrogator's comments that he or she believes the suspect is lying are only admissible to the
 
 *254
 
 extent that they provide context to a relevant answer by the suspect." (quoting
 
 State v. Cordova
 
 ,
 
 137 Idaho 635
 
 , 641,
 
 51 P.3d 449
 
 , 455 (Idaho Ct. App. 2002) )).
 

 Finally, in
 
 State v. Garcia
 
 ,
 
 228 N.C.App. 89
 
 ,
 
 743 S.E.2d 74
 
 (2013),
 
 disc. review denied
 
 ,
 
 367 N.C. 326
 
 ,
 
 755 S.E.2d 619
 
 (2014), the defendant initially denied any knowledge of a homicide during an interview with police.
 
 Id.
 
 at 98,
 
 743 S.E.2d at 80
 
 . At trial, however, he admitted to killing the victim but claimed he did so in self-defense.
 

 Id.
 

 at 99
 
 ,
 
 743 S.E.2d at 80
 
 . We held that the challenged statements made by the detectives during the interrogation were admissible because the "[d]efendant's credibility was a key issue for the jury to decide," and his willingness "to repeatedly lie, in spite of [the detective's] pressuring interrogation techniques, was highly probative of [the] defendant's credibility."
 

 Id.
 

 Consistent with its position at trial, the State maintains that Detective Watkins' statements were "relevant and admissible, not for the truth of the matter asserted, but to show the interrogation techniques of the detectives and to provide context for defendant's responses." Its reliance on the above-cited cases, however, is misplaced. First, unlike
 
 Miller
 
 , the evidence was not relevant for the purpose of placing defendant's answers in "context" because defendant made no concessions during the interrogation. Instead, he repeatedly denied any involvement in the robbery, and we cannot agree with the State that defendant's denials were incriminating and, therefore, relevant and admissible. Second, unlike
 
 Castaneda
 
 , the evidence was not relevant for the purpose of showing the detective's interrogation techniques because defendant's responses never changed-much less due to any method used by the detective. And a demonstration of even the most impressive interrogation tactics, standing alone, would not have "made facts of consequence to this case more probable or less probable than they would be otherwise."
 
 Miller
 
 ,
 
 197 N.C.App. at 87
 
 ,
 
 676 S.E.2d at 552
 
 . Finally, although we declined to limit
 
 Miller
 
 as allowing an interrogator's statements to be admitted into evidence "only if they caused the defendant to concede the truth or change his story,"
 
 Garcia
 
 ,
 
 228 N.C.App. at 98
 
 ,
 
 743 S.E.2d at 80
 
 , here, unlike
 
 Garcia
 
 , the evidence was not relevant for the purpose of impeaching defendant's credibility because he did not testify at trial.
 

 While we agree with defendant that the statements were not relevant to the nonhearsay purposes for which they were offered, he has failed to show prejudice to warrant a new trial. We presume that the jury follows the trial court's instructions,
 
 State v. Gregory
 
 ,
 
 340 N.C. 365
 
 , 408,
 
 459 S.E.2d 638
 
 , 663 (1995) (citation omitted), and in this case, the
 
 *391
 
 court instructed the jury twice that it was not to consider the detective's statements for their truth. Moreover, this was not a situation where the State relied on the detective's statements to develop its central theory or build its case against defendant.
 
 Cf.
 

 State v. Canady
 
 ,
 
 355 N.C. 242
 
 , 249,
 
 559 S.E.2d 762
 
 , 766 (2002) (holding that officer's testimony received to explain his subsequent actions was inadmissible hearsay where it went "so far beyond the confines of the instruction" and the State relied on it "as substantive evidence of the details of the murders and to imply defendant had given a detailed confession of his alleged crimes"). In fact, based on the overwhelming evidence against defendant, there appears to have been no need for the State to publish the video to the jury. Surveillance footage captured a male suspect matching defendant's description leaving Target, standing with Ms. Clevinger at Dollar General as she purchased the knife set, and subsequently entering the SBC. Persinger identified the male suspect as defendant, whom she had seen the day before the robbery, and McDade identified defendant as the perpetrator in a photographic line-up. In addition, the DNA results from the red polo shirt found near the SBC matched defendant's DNA profile. Defendant's fingerprints were also found on both the DVD and the chef's knife set purchased from the Dollar General store. In light of this evidence, we are not convinced there is a reasonable possibility that without the video, the jury would have reached a different result. Any error in the admission of the challenged evidence was harmless.
 
 *255
 

 B. Jury Instructions
 

 Defendant also argues that the trial court erred in failing to submit his requested instruction for common law robbery. Because the court left it to the jury to determine if the alleged weapon was a dangerous weapon, defendant contends, it was also required to submit the lesser-included instruction to the jury.
 

 We review
 
 de novo
 
 the trial court's decision regarding its jury instructions.
 
 State v. Osorio
 
 ,
 
 196 N.C.App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009) (citations omitted). The trial court must "instruct the jury on all substantial features of a case raised by the evidence."
 
 State v. Shaw
 
 ,
 
 322 N.C. 797
 
 , 803,
 
 370 S.E.2d 546
 
 , 549 (1988). "Failure to instruct upon all substantive or material features of the crime charged is error."
 
 State v. Bogle
 
 ,
 
 324 N.C. 190
 
 , 195,
 
 376 S.E.2d 745
 
 , 748 (1989). On the other hand, "a trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial."
 
 State v. Cameron
 
 ,
 
 284 N.C. 165
 
 , 171,
 
 200 S.E.2d 186
 
 , 191 (1973),
 
 cert. denied
 
 ,
 
 418 U.S. 905
 
 ,
 
 94 S.Ct. 3195
 
 ,
 
 41 L.Ed.2d 1153
 
 (1974).
 

 *392
 
 "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater."
 
 State v. Millsaps
 
 ,
 
 356 N.C. 556
 
 , 561,
 
 572 S.E.2d 767
 
 , 771 (2002) ;
 
 see also
 

 State v. Bailey
 
 ,
 
 278 N.C. 80
 
 , 86,
 
 178 S.E.2d 809
 
 , 812 (1971) ("When there is evidence of defendant's guilt of common law robbery, it is error for the court to fail to submit the lesser offense to the jury." (citations omitted)). If, however, "the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the trial judge to refuse to instruct on the lesser offense."
 
 State v. Hardy
 
 ,
 
 299 N.C. 445
 
 , 456,
 
 263 S.E.2d 711
 
 , 718-19 (1980) (citing
 
 State v. Alston
 
 ,
 
 293 N.C. 553
 
 ,
 
 238 S.E.2d 505
 
 (1977) ).
 

 Robbery with a dangerous weapon consists of the following elements: (1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened.
 
 N.C. Gen. Stat. § 14-87
 
 (a) (2015). Common law robbery is a lesser-included offense of robbery with a dangerous weapon.
 
 State v. Frazier
 
 ,
 
 150 N.C.App. 416
 
 , 418-19,
 
 562 S.E.2d 910
 
 , 913 (2002). The difference between the two offenses is that robbery with a dangerous weapon is "accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened."
 

 Id.
 

 (quoting
 
 State v. Peacock
 
 ,
 
 313 N.C. 554
 
 , 562,
 
 330 S.E.2d 190
 
 , 195 (1985) ).
 

 "A deadly weapon is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm."
 
 State v. Sturdivant
 
 ,
 
 304 N.C. 293
 
 , 301,
 
 283 S.E.2d 719
 
 , 725 (1981) (citations omitted). Relevant here, "the evidence in each case determines whether a certain kind of knife is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death."
 
 Id.
 
 at 301,
 
 283 S.E.2d at 726
 
 (citations omitted). "The dangerous or deadly character of a weapon with which [the] accused was armed in committing a robbery may be established by circumstantial evidence."
 
 State v. Rowland
 
 ,
 
 263 N.C. 353
 
 , 357,
 
 139 S.E.2d 661
 
 , 664 (1965) (citation and internal quotation marks omitted).
 

 In support of his argument, defendant relies on
 
 State v. Jackson
 
 ,
 
 85 N.C.App. 531
 
 ,
 
 355 S.E.2d 224
 
 (1987), and
 
 State v. Brandon
 
 ,
 
 120 N.C.App. 815
 
 ,
 
 463 S.E.2d 798
 
 (1995), for the proposition that where the trial court submits to the jury the question of whether a dangerous weapon
 
 *393
 
 was used to commit a robbery, it must also submit an instruction for common law robbery. That may be the rule when there is evidence of common law robbery, but as our Supreme Court has held repeatedly, an instruction for the lesser-included offense is not required when there is no evidence to support it:
 

 The necessity for instructing the jury as to an included crime of lesser degree than
 
 *256
 
 that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The
 
 presence of such evidence
 
 is the determinative factor. Hence, there is no such necessity if the State's evidence tends to show a completed robbery and there is
 
 no conflicting evidence
 
 relating to elements of the crime charged. Mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice.
 

 State v. Hicks
 
 ,
 
 241 N.C. 156
 
 , 159-60,
 
 84 S.E.2d 545
 
 , 547 (1954) ;
 
 see
 

 Peacock
 
 ,
 
 313 N.C. at 564
 
 ,
 
 330 S.E.2d at 196
 
 (holding that common law robbery instruction was not required where "all of the State's uncontradicted evidence, if believed, tend[ed] to compel the conclusion that the vase as wielded by defendant, 'endangered or threatened' the victim's life" and "[t]here was no evidence to support an instruction on a lesser included offense");
 
 State v. Porter
 
 ,
 
 303 N.C. 680
 
 , 686,
 
 281 S.E.2d 377
 
 , 382 (1981) ("As a general rule, when there is evidence of defendant's guilt of a crime which is a lesser included offense of the crime stated in the bill of indictment, the defendant is entitled to have the trial judge submit an instruction on the lesser included offense to the jury." (citations omitted));
 
 State v. Lee
 
 ,
 
 282 N.C. 566
 
 , 569,
 
 193 S.E.2d 705
 
 , 707 (1973) ("In a prosecution for armed robbery the court is not required to submit the lesser included offense of common law robbery unless there is evidence of defendant's guilt of that crime.");
 
 State v. Richardson
 
 ,
 
 279 N.C. 621
 
 , 627,
 
 185 S.E.2d 102
 
 , 107 (1971) (rejecting defendant's argument that an instruction on common law robbery was required because "[t]here was no evidence that would warrant or support a finding that defendant was guilty of a lesser included offense");
 
 State v. Wenrich
 
 ,
 
 251 N.C. 460
 
 , 460,
 
 111 S.E.2d 582
 
 , 583 (1959) ("[T]he court should not submit to the jury an included lesser crime where there is no testimony tending to show that such lesser offense was committed."),
 
 overruled on other grounds by
 

 State v. Hurst
 
 ,
 
 320 N.C. 589
 
 ,
 
 359 S.E.2d 776
 
 (1987),
 
 overruled by
 

 State v. White
 
 ,
 
 322 N.C. 506
 
 ,
 
 369 S.E.2d 813
 
 (1988) ;
 
 see also
 

 State v. Rowland
 
 ,
 
 89 N.C.App. 372
 
 , 377,
 
 366 S.E.2d 550
 
 , 553 ("[T]here is no requirement to
 
 *394
 
 submit the lesser included offense to the jury when there is no evidence to sustain a verdict of defendant's guilt of such lesser offense." (citations omitted)),
 
 disc. review improvidently allowed
 
 ,
 
 323 N.C. 619
 
 ,
 
 374 S.E.2d 116
 
 (1988).
 

 In this case, the circumstantial yet uncontroverted evidence shows that the knife was the same one missing from a new three-piece set of chef's knives purchased hours before the robbery. It also shows that during the robbery, the man identified as defendant grabbed McDade's fifteen-year-old daughter, pulled her head back, and held the knife against her neck as he threatened to slit her throat. The State's evidence was clear and positive as to the dangerous weapon element, and there was no evidence from which a rational juror could find that the knife, based on its nature and the manner in which it was used, was anything other than a dangerous weapon.
 

 Nor was there any evidence that a knife was not used during the robbery, that the knife used was different than the one from the knife set, or that the knife was used in a non-threatening manner. If the jury believed the State's evidence-that defendant robbed the SBC with the missing chef's knife-then it was required to find him guilty of robbery with a dangerous weapon. But if the jury was not convinced that defendant was the robber, then it was required to acquit him altogether.
 
 See
 

 State v. Black
 
 ,
 
 286 N.C. 191
 
 , 196,
 
 209 S.E.2d 458
 
 , 462 (1974). On the facts of this case, therefore, defendant was not entitled to a lesser-included instruction for common law robbery: he was either guilty of robbing the SBC by the threatened use of the chef's knife, or he was not guilty at all.
 
 See
 

 State v. Fletcher
 
 ,
 
 264 N.C. 482
 
 , 485,
 
 141 S.E.2d 873
 
 , 875 (1965) ;
 
 Rowland
 
 ,
 
 89 N.C.App. at 379
 
 ,
 
 366 S.E.2d at 554
 
 .
 

 III. Conclusion
 

 Defendant received a trial free from prejudicial error. While we agree that the challenged portions of the interrogation video were not relevant to the nonhearsay purposes for which they were offered, any error in their admission was harmless in light of the trial court's limiting instructions and the
 
 *257
 
 overwhelming evidence of defendant's guilt. In addition, the trial court did not err in denying defendant's request for an instruction on the lesser-included offense of common law robbery because there was no evidence to support it.
 

 NO PREJUDICIAL ERROR; NO ERROR.
 

 Judges DAVIS and DIETZ concur.