STROUD, Judge.
 

 *580
 
 Morquel Redmond appeals his conviction of robbery with a dangerous weapon. Defendant argues that the trial court erred by failing to instruct the jury on the lesser included offense of common law robbery. Because the trial court could have found the box cutter to be a dangerous weapon as a matter of law, despite submitting this issue to the jury, Defendant was not entitled to a jury instruction on the lesser included offense of common law robbery. Defendant's trial was free of prejudicial error.
 

 I. Background
 

 The State's evidence tended to show that on 20 March 2015, Defendant robbed a Tobacco Road Outlet in Kinston. Linda Walston
 
 *581
 
 was working in the store at the time of the robbery. Defendant and Ms. Walston struggled until Defendant brandished a box cutter and threatened her. Defendant then dragged Ms. Walston to the back room of the store and tied her up with a cord. Defendant took cash out of the register and fled, leaving Ms. Walston tied up.
 

 Law enforcement officers identified Defendant from video surveillance images from the store, with the help of Defendant's mother. Defendant was taken into custody, and officers searched his vehicle and found two box cutters. Defendant was indicted for robbery with a dangerous weapon and first degree kidnapping. At trial, after a
 
 Harbison
 
 inquiry, Defendant admitted that he committed the offenses of common law robbery and second-degree kidnapping. Ms. Walston testified about the events of 20 March 2015, and the State introduced video surveillance from the store during the robbery. Defendant did not present any evidence. During the charge conference, Defendant's counsel requested an instruction on common law robbery which was denied by the trial court. Defendant was found guilty of robbery with a dangerous weapon and first-degree kidnapping and sentenced within the presumptive range. Defendant timely appealed and only challenges his robbery with a dangerous weapon conviction.
 

 II. Standard of Review
 

 Defendant argues that "the trial court erred when it refused to issue a lesser-include[d] offense instruction for common law robbery." The State contends that "Defendant is not entitled to an instruction on the lesser included offense because the evidence does not show that a rational jury would find him guilty of common law robbery given the extensive testimony [presented at Defendant's trial]."
 

 We review
 
 de novo
 
 the trial court's decision regarding its jury instructions. The trial court must "instruct the jury on all substantial features of a case raised by the evidence." "Failure to instruct upon all substantive or material features of the crime charged is error." On the other hand, "a trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial."
 

 "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and
 
 *653
 
 to acquit him of the greater." If, however, "the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence
 
 *582
 
 showing the commission of a lesser included offense, it is not error for the trial judge to refuse to instruct on the lesser offense."
 

 State v. Clevinger
 
 , --- N.C. App. ----, ----,
 
 791 S.E.2d 248
 
 , 255 (2016) (citations omitted).
 

 Because Defendant requested a jury instruction on common law robbery, we review the instructions
 
 de novo
 
 .
 

 III. Lesser Included Offense
 

 A defendant is "entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."
 
 State v. Leazer
 
 ,
 
 353 N.C. 234
 
 , 237,
 
 539 S.E.2d 922
 
 , 924 (2000). Only one element distinguishes common law robbery and robbery with a dangerous weapon, and that element is the use of a dangerous weapon:
 

 Robbery with a dangerous weapon consists of the following elements: (1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened. Common law robbery is a lesser-included offense of robbery with a dangerous weapon. The difference between the two offenses is that robbery with a dangerous weapon is accomplished by the use or threatened use of a dangerous weapon whereby the life of a person is endangered or threatened.
 

 A deadly weapon is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm. Relevant here, the evidence in each case determines whether a certain kind of knife is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death. The dangerous or deadly character of a weapon with which the accused was armed in committing a robbery may be established by circumstantial evidence.
 

 Clevinger
 
 , --- N.C. App. at ----,
 
 791 S.E.2d at 255
 
 (citations, quotation marks, and brackets omitted).
 

 Defendant raises three arguments in his brief: "(1) the State never presented the box cutter, (2) Walston did not suffer any injuries from
 
 *583
 
 the box cutter, and (3) the trial court did not find the box cutter to be a deadly weapon as a matter of law[.]" The State's failure to present the box cutter as evidence, and the absence of injuries are facts the jury could consider in its determination of whether the box cutter was used as a "dangerous weapon," but neither are required for a weapon to be a "dangerous weapon" under the law.
 
 See
 
 id.
 

 The weight to give to the evidence is for the jury to determine.
 
 See
 

 State v. Collins
 
 ,
 
 30 N.C. 407
 
 , 412-13 (1848) ("Whether the instrument used was such as is described by the witnesses, where it is not produced, or, if, produced, whether it was the one used, are questions of fact[.]").
 

 Next, physical injuries are not required for a dangerous weapon to be considered dangerous.
 
 See
 

 State v. Young
 
 ,
 
 317 N.C. 396
 
 , 417,
 
 346 S.E.2d 626
 
 , 638 (1986) ("In order to be characterized as a 'dangerous or deadly weapon,' an instrumentality need not have actually inflicted serious injury. A dangerous or deadly weapon is 'any article, instrument or substance which is likely to produce death or great bodily injury.' ").
 

 The main issue here is whether the trial court was required to give the lesser included offense instruction on common law robbery where the judge did not instruct the jury that the box cutter was a deadly weapon as a matter of law but instead submitted this factual issue to the jury. Almost anything can be a dangerous weapon, depending upon the manner of use in a particular case:
 

 But where it may or may not be likely to produce such results, according to the manner of its use, or the part of the body at which the blow is aimed, its alleged deadly character is one of fact to be determined by the jury. 'Where the deadly character of the weapon is to be determined by the relative size and condition of the parties and the manner in which it is used,' the question is for the jury. 'If its character
 
 *654
 
 as being deadly or not, depended upon the facts and circumstances, it became a question for the jury with proper instructions from the court.'
 

 State v. Perry
 
 ,
 
 226 N.C. 530
 
 , 535,
 
 39 S.E.2d 460
 
 , 464 (1946) (citations omitted).
 

 Defendant is correct that the trial court did not find the box cutter to be a deadly weapon as a matter of law, but this does not end the inquiry. Our Court has held that if the trial court could have determined the weapon to be a deadly weapon as a matter of law based upon the evidence, but instead submitted that issue to the jury, its failure to give
 
 *584
 
 an instruction on the lesser-included offense is not prejudicial error.
 
 Clevinger
 
 , --- N.C. App. at ----,
 
 791 S.E.2d at 256
 
 . This Court has rejected
 

 the proposition that where the trial court submits to the jury the question of whether a dangerous weapon was used to commit a robbery, it must also submit an instruction for common law robbery. That may be the rule when there is evidence of common law robbery, but as our Supreme Court has held repeatedly, an instruction for the lesser-included offense is not required when there is no evidence to support it:
 

 The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The
 
 presence of such evidence
 
 is the determinative factor. Hence, there is no such necessity if the State's evidence tends to show a completed robbery and there is
 
 no conflicting evidence
 
 relating to elements of the crime charged. Mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice.
 

 Id.
 

 at ----,
 
 791 S.E.2d at 255-56
 
 (quoting
 
 State v. Hicks
 
 ,
 
 241 N.C. 156
 
 , 159-60,
 
 84 S.E.2d 545
 
 , 547 (1954) ).
 

 We therefore turn to the evidence presented at trial to determine if there any "
 
 conflicting evidence
 
 relating to the elements of the crime charged."
 

 Id.
 

 at ----,
 
 791 S.E.2d at 256
 
 . At trial, Ms. Walston's testimony about the incident included a description of the box cutter:
 

 Q. At around the ten o'clock hour did an individual wearing a red hoodie come into your store?
 

 A. Yes.
 

 Q. Can you tell us what happened when he came into the store?
 

 A. He asked -- he was looking his uncle something for his birthday. He was asking about some cigars behind the counter and I was price checking them and giving him some prices and he said he needed to leave and go get some money. He'd be back in a little bit and he left.
 

 *585
 
 He came back. When he came back, he asked me about the premium cigars that was in the little humidor in the back, he said are they expensive. I said there's some pretty expensive ones in there. He said, well, just grab me two of the most expensive ones you've got. I'll just get him those.
 

 So, I walked into the room and grabbed two cigars. As I come out the door, I handed him the two cigars and started around the end of the counter to go back to the cash register. When I did, he throwed me up against the chewing tobacco and started fighting me and, of course, I started fighting back.
 

 We proceeded to fight. I fell on the floor. He started choking me. He ripped the buttons off my shirt. Then he somehow managed to get the box cutter. I don't know if he had it because after it was all done and everything I had cuts on the ends of my boots, which I didn't see it until he actually put it in my face and said that he was going to kill me if I didn't cooperate.
 

 Q. What did he put it in your face?
 

 A. Right to my face.
 

 Q. What was the item that he put --
 

 A. A box cutter.
 

 Q. And can you describe the box cutter?
 

 A. A box cutter. That's all I know. I know what a box cutter looks like. I mean, it was a box cutter.
 

 *655
 
 Q. And when you say a box cutter, does it have a particular part on a box cutter that has a razorblade?
 

 A. It has an angled blade that sticks out the end of it, yes.
 

 Q. Was that part facing you?
 

 A. Yes.
 

 Q. About how close was it to you?
 

 A. Close enough that I cooperated.
 

 Q. Where was it pointed?
 

 *586
 
 A. In my face.
 

 On cross-examination, Defendant's counsel asked Ms. Walston about the box cutter:
 

 Q. Okay. And you testified to the jury that you saw a box cutter, is that right?
 

 A. Yes.
 

 Q. Now, what I know to be a box cutter is a razorblade which is enclosed inside of a metal cover --
 

 A. Yeah.
 

 Q. -- is that correct?
 

 A. Correct.
 

 Q. And essentially what you do with a box cutter is you put the razorblade out and you pull --
 

 A. And you open a box.
 

 Q. -- pull it down and it opens a box?
 

 ....
 

 Q. And specifically the box cutter, do you remember if it was silver, black? Do you remember any color about it?
 

 A. I believe it was silver. I do. I know the razor part was silver.
 

 Q. Okay.
 

 A. That was in my face.
 

 Although the weapon used here was a box cutter instead of a chef's knife, the facts here as to the use of the weapon are quite similar to
 
 Clevenger
 
 , where
 

 during the robbery, the man identified as defendant grabbed McDade's fifteen-year-old daughter, pulled her head back, and held the knife against her neck as he threatened to slit her throat. The State's evidence was clear and positive as to the dangerous weapon element, and there was no evidence from which a rational juror could find that the knife, based on its nature and the manner in which it was used, was anything other than a dangerous weapon.
 

 *587
 

 Id.
 

 at ----,
 
 791 S.E.2d at 256
 
 (2016). The court in
 
 Clevinger
 
 held that since there was no conflicting evidence about the knife or its use, the trial court did not err by failing to give an instruction on common law robbery:
 

 Nor was there any evidence that a knife was not used during the robbery, that the knife used was different than the one from the knife set, or that the knife was used in a non-threatening manner. If the jury believed the State's evidence-that defendant robbed the SBC with the missing chef's knife-then it was required to find him guilty of robbery with a dangerous weapon. But if the jury was not convinced that defendant was the robber, then it was required to acquit him altogether. On the facts of this case, therefore, defendant was not entitled to a lesser-included instruction for common law robbery: he was either guilty of robbing the SBC by the threatened use of the chef's knife, or he was not guilty at all.
 

 Id.
 

 at ----,
 
 791 S.E.2d at 256
 
 (citations omitted).
 

 Here, the State's evidence was positive that the defendant held the box cutter, with the blade extended, in Ms. Walston's face and threatened to kill her if she did not cooperate.
 
 See
 
 id.
 

 ("Nor was there any evidence that a knife was not used during the robbery, that the knife used was different than the one from the knife set, or that the knife was used in a non-threatening manner."). A box cutter is one type of weapon which has been treated as deadly as a matter of law.
 
 See
 

 State v. Wiggins
 
 ,
 
 78 N.C. App. 405
 
 , 407,
 
 337 S.E.2d 198
 
 , 199 (1985) ("The cutter has an exposed, sharply pointed razor blade clearly capable of producing death or great bodily harm. The victim testified that defendant held the cutter a couple of inches from her side as he instructed her to open the cash register. From that position a slight movement of defendant's hand in the direction of the victim's side clearly could have resulted in death or great bodily harm. Accordingly ... we hold that the court did not err by instructing that the weapon was dangerous
 
 *656
 

 per se.
 
 "). Therefore, as in
 
 Clevinger
 
 , Defendant was either guilty of robbing the Tobacco Road Outlet with the threat of using the open box cutter or he was not guilty at all.
 
 See
 

 Clevinger,
 
 --- N.C. App at ----,
 
 791 S.E.2d at 256
 
 . ("On the facts of this case, therefore, defendant was not entitled to a lesser-included instruction for common law robbery: he was either guilty of robbing the SBC by the threatened use of the chef's knife, or he was not guilty at all.").
 
 *588
 
 IV. Conclusion
 

 The trial court did not err in failing to instruct the jury on common law robbery.
 

 NO ERROR.
 

 Judges TYSON and HAMPSON concur.