An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-964

Filed 3 December 2025

Wilkes County, Nos. 22CR000374-960, 22CR050115-960, 23CR000159-960

STATE OF NORTH CAROLINA

v.

JAMES WAYNE HOLSCLAW

Appeal by defendant from judgments entered 26 July 2023 by Judge Lori I. Hamilton in Wilkes County Superior Court. Heard in the Court of Appeals 28 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Aymie Barrows Feeney, for the State.*

> *Blau & Hynson, PLLC, by Warren D. Hyson, for defendant.*

FREEMAN, Judge.

Defendant appeals from judgments entered after guilty verdicts for felony breaking and entering and felony larceny, and from the trial court's restitution order. On appeal, defendant argues the trial court erred by not instructing the jury on the lesser included charge of attempted larceny, and by ordering him to pay restitution to the victim. After careful review, we hold that the trial court did not err by refusing

to give the attempted larceny instruction and vacate the trial court's restitution order.

## I.    Factual and Procedural Background

The evidence presented at trial tended to show the following.  Defendant was an employee of Johnston Casuals Furniture, Inc., a production plant that manufactures steel furniture.  One of defendant's job responsibilities was to ensure that the doors were securely latched at the end of the day in a specific area of the plant.  Around 8:30 p.m. on 20 January 2022, plant manager Andrew Shepherd was alerted of movement inside the plant; no one was authorized to be there at that time and the plant had been closed for the entire day.  Shepherd remotely checked the camera system and observed "two individuals . . . one taller man than the other" inside the plant.  The camera system had "discretely" been installed a few weeks prior because some items had "started to go missing around the plant[.]"

Shepherd arrived at the plant around 9:00 p.m. and met Sergeant Ryan Blair, Sergeant Reavis, and Officer Rocky Whitley of the North Wilkesboro Police Office. The officers saw a U-Haul truck backed into the loading dock.  The back door of the truck was open, and there was a "pallet of sheet steel" containing five or six sheets of scrap metal, tube steel, and three or four barrels of "solid scrap metal" inside.  One barrel of scrap metal was on a forklift near the truck.  Shepherd estimated that the value of this metal was "somewhere around [$]1000 or $1200."  Inside the truck's cab, police found a U-Haul rental contract in the name of Robert Wohlers, and Wohlers'

wallet and drivers' license. The scrap metal on the truck was later returned to the company.

Officer Whitley saw Robert Wohlers walk towards the back of the truck and detained him. Officer Whitley then saw "the feet of the subject run" and heard a door open. When the officers searched outside the plant, they saw one set of footprints in fresh snow leading from the door to the nearby wooded area. Officer Whitley reviewed the footage from the dash camera of his police car and confirmed it recorded "a male subject coming from [the plant] to the wooded area." Sergeant Blair observed the back of what appeared to be a man wearing a black jacket and blue jeans leaving the plant.

A security guard from a nearby business told the police that he saw a man walking west along Highway 268. Sergeants Blair and Reavis then drove west on Highway 268 and saw defendant walking on the sidewalk less than one mile from the plant. Defendant was wearing a black jacket and blue jeans, which matched the subject that Sergeant Blair saw leaving the plant. Defendant's hands and clothes were dirty from "the stuff off the metal," and his clothes were damp "as if . . . he had laid down in the snow or fell down in the snow[.]" Defendant was subsequently arrested.

While Sergeants Blair and Reaves continued to investigate, Officer Whitley interviewed Wohlers. Wohlers told Officer Whitley that "Holsclaw" was the other person with him without using defendant's first name. Additionally, Wohlers said

that he and defendant had permission from management to take and sell the scrap metal. Wohlers said that defendant either had a key to the plant or left a door open.

On 6 September 2022, defendant was indicted on the charges of felony breaking and entering, felony larceny, habitual breaking and entering, and attaining habitual felon status. On 24 July 2023, defendant's matter came on for trial.

Joseph Johnston, president and owner of Johnston Casuals, testified that defendant did not have permission to take the scrap metal. Plant manager Shepherd similarly testified that neither defendant nor Wohlers had permission to be at the plant that night or to take scrap metal from the plant.

Wohlers, who had pleaded guilty to various charges related to his involvement with the case, testified at trial. Wohlers testified that defendant told him that he had permission to "take a load of scrap metal out of the barrels" and needed Wohlers to rent a truck. When they were on the way to the plant, defendant reaffirmed that he had permission. Wohlers testified that he backed the truck into the loading dock after defendant opened the front gate to the plant. He and defendant loaded the truck with three barrels and were taking a break by the truck when the police ran into the loading dock area and recognized Wohlers from "a couple of District Court incidents[.]" Wohlers confirmed that defendant ran away once the police arrived.

Before the State's final witness testified, the trial court had an "anticipated charge conference" with counsel and discussed draft jury instructions. Defense counsel requested that the trial court instruct the jury on attempted larceny. The

State did not object. The trial court was concerned about instructing the jury on attempted larceny when defendant had "not been charged with the attempt"; however, the trial court noted "the evidence would support [attempted larceny] clearly because there's no indication—the evidence is that nothing was actually removed from the building."

After the close of the State's evidence, the trial court heard arguments on the felony larceny charge: specifically, the asportation element. Defendant argued that because "nothing was actually taken" from the plant, and "even if it was in the process of and that had not been completed." Defendant requested the trial court either dismiss the larceny charges or alternatively find that it was an attempt. The State argued that our caselaw did not require "a defendant be successful and permanently depriving the rightful owner of his possession. It is sufficient if there is a taking with the intent to permanently deprive the owner of his possession at the time of the taking."[1] The trial court declined to instruct the jury on attempted larceny and instead decided to include language "in the jury instruction that tracks the language of the North Carolina Supreme Court[.]"

The trial court ultimately instructed the jury:

> Larceny is the taking and carrying away of the personal property of a corporation without its consent with the intent to deprive the corporation of possession permanently. It is not necessary that a defendant be

---

[1] To support its argument, the State relied on: *State v. King*, 299 N.C. 707 (1980); *State v. Green*, 81 N.C. 560 (1879); and *State v. Walker*, 6 N.C. App. 740 (1969).

successful in permanently depriving the rightful owner of its possession. It is sufficient if there's a taking with the intent to permanently deprive the owner of his possession at the time of the taking.

On 26 July 2023, the jury found defendant guilty of felony breaking and entering and felony larceny. Defendant subsequently pleaded guilty to habitual breaking and entering and attaining habitual felon status. The trial court sentenced defendant to a consolidated sentence in the aggravated range, with habitual felon enhancement, to 150 to 192 months' imprisonment. The trial court ordered that defendant pay $1,250.00 restitution to Johnston Casuals and held him jointly and severally liable with Wohlers. Defendant entered oral notice of appeal in open court.

## II. Jurisdiction

We have jurisdiction to review "any final judgment of a superior court . . . ." N.C.G.S. § 7A-27(b)(1) (2023). Accordingly, we have jurisdiction over defendant's appeal of right.

## III. Standard of Review

"This Court reviews challenges to the trial court's jury instructions de novo." *State v. Austin*, 279 N.C. App. 377, 385 (2021) (emphasis omitted). We "review de novo whether the restitution order was supported by evidence at trial or sentencing." *State v. Hardy*, 242 N.C. App. 146, 159 (2015) (emphasis omitted).

## IV. Discussion

Defendant argues that the trial court erred in not instructing the jury on

attempted larceny and by ordering defendant to pay restitution to Johnston Casuals. We address each argument in turn.

## A. Jury Instruction

Defendant maintains that the trial court erred by not instructing the jury on attempted larceny because property was not removed from the plant, and there was conflicting evidence about whether defendant had consent to take the property. We disagree.

"When any evidence presented at trial would permit the jury to convict [the] defendant of the lesser included offense, the trial court must instruct the jury regarding that lesser included offense." *State v. Whitaker*, 316 N.C. 515, 520 (1986) (cleaned up). "An instruction on a lesser[ ]included offense must be given only if the evidence would permit the jury rationally to find [the] defendant guilty of the lesser offense and to acquit him [or her] on the greater." *State v. Millsaps*, 356 N.C. 556, 561 (2002). "The trial court is required to charge on a lesser [included] offense only when there is evidence to support a verdict finding the defendant guilty of such lesser offense." *State v. Hickey*, 317 N.C. 457, 470 (1986). If "the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the trial judge to refuse to instruct on the lesser offense." *State v. Clevinger*, 249 N.C. App. 383, 392 (2016). "When determining whether there is sufficient evidence for submission of a lesser included offense to the jury, we view the evidence in the light

most favorable to the defendant." *State v. Ryder*, 196 N.C. App. 56, 64 (2009).

Attempted larceny is a lesser included offense of felony larceny. *See State v. Ford*, 195 N.C. App. 321, 323 (2009). The elements of larceny are "that the defendant: (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Irvins*, 277 N.C. App. 101, 102 (2021); *see also* N.C.G.S. § 14-72(b)(2) (2023).

> The essential elements of attempted larceny are: (1) An intent to take and carry away the property of another; (2) without the owner's consent; (3) with the intent to deprive the owner of his or her property permanently; (4) an overt act done for the purpose of completing the larceny, going beyond mere preparation; and (5) falling short of the completed offense.

*State v. Weaver*, 123 N.C. App. 276, 287 (1996).

For the offense of larceny, "[t]he element of 'taking' requires the accused have the goods 'in his possession, or under his control, even if only for an instant.' " *State v. Sisk*, 285 N.C. App. 637, 641 (2022) (citing *State v. Carswell*, 296 N.C. 101, 104 (1978)). Carrying away the property "does not require that the property be completely removed from the premises of the owner." *Id.* (cleaned up). "Rather, '[a] bare removal from the place in which he found the goods, though the thief does not quite make off with them, is a sufficient asportation, or carrying away.' " *Id.* (citing *Carswell*, 296 N.C. at 103) (alteration in original).

Here, Defendant moved scrap metal from the plant into a truck that he had instructed his co-conspirator to rent, and by doing so possessed and controlled the

property. Though he did not take the metal out of the plant's grounds, he did not need to do so to satisfy the elements of taking and carrying away. *See Sisk*, 285 N.C. App. at 641. Therefore, the evidence shows that defendant satisfied the taking and carrying elements of larceny to support completion of the offense and not the attempt.

Defendant further maintains that the trial court was required to instruct the jury on attempted larceny because there was conflicting evidence presented trial about whether defendant had consent to take the scrap metal.

Below, defendant argued that the trial court should give an attempted larceny instruction because he did not remove the property from the plant's premises; he did not argue the instruction should be given because of conflicting evidence about whether the victim consented to the taking. Therefore, this argument is not preserved for appellate review. *See State v. Sharpe*, 344 N.C. 190, 195 (1996) ("[W]here a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount" on appellate review. (cleaned up)); *State v. Ellis*, 205 N.C. App. 650, 654 (2010) (same).

Even if this argument were preserved, however, it still would fail. Though there was some conflicting evidence about whether defendant had consent to take the property, the lack of consent is an essential element of both larceny and attempted larceny. If the jury found that defendant did not have consent to take away the property for the offense of larceny, then it necessarily would have found that he did

not have consent in the attempt. Inversely, if the jury had found that defendant did have consent to take the property, then it would have acquitted him of both the greater and lesser offense. Put another way, the jury could not have rationally convicted defendant of attempted larceny and acquitted him of felony larceny because of the disputed evidence about whether defendant had permission to take the property. *See Millsaps*, 356 N.C. at 561.

The evidence was "clear and positive" with respect to the offense of larceny, and there is no evidence tending to show the commission of attempted larceny. Accordingly, the trial court did not err by not instructing the jury on the lesser offense of attempted larceny.

## B. Restitution Order

Next, defendant argues that the trial court impermissibly ordered him to pay restitution because property was not taken from the plant, and the amount it ordered him to pay was impermissibly speculative.

Trial courts shall "require that the defendant make restitution to the victim or the victim's estate for any injuries or damages arising directly and proximately out of the offense committed by the defendant." N.C.G.S. § 15A-1340.34(b) (2023). "The trial court must consider the return of property to the injured owner and the condition in which that property was returned." *State v. Hill*, 291 N.C. App. 633, 648 (2023) (citing N.C.G.S. § 15A-1340.34 (2019)). "[T]here must be something more than a guess or conjecture as to an appropriate amount of restitution." *State v. Daye*, 78

N.C. App. 753, 758 (1986). "The amount of restitution ordered by the trial court must be supported by competent evidence at trial or sentencing." *State v. Blount*, 209 N.C. App. 340, 347 (2011).

Here, the trial court ordered that defendant pay $1,250.00 in restitution. However, the scrap metal loaded on the truck was returned to Johnston Casuals. Though Shepherd confirmed that it was "possible" that "there could have been items that were taken that were never found," there was no evidence beyond this speculation that defendant or Wohlers took any property other than what they loaded onto the truck.

Additionally, the only evidence of the value of the items taken was Shepherd's testimony that he "initially estimated" the scrap metal was worth "somewhere around" $1,000 or $1,200. This is not more than "a guess or conjecture" of the appropriate amount of restitution, so it does not support the trial court's restitution order of $1,250.00. Because the property taken by defendant was returned to Johnston Casuals, and there was nothing more than a "guess or conjecture" to evidence the value of the property taken, we vacate the trial court's restitution order.

## V. Conclusion

For the foregoing reasons, we hold that the trial court did not err by not instructing the jury on attempted larceny and vacate the restitution order entered against defendant.

NO ERROR IN PART; VACATED IN PART.

Judges ARROWOOD and COLLINS concur.

Report per Rule 30(e).